UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JEREMY TYLER SWINK,

        Defendant.
_____/

No. 1:21-cr- 43

HON. ROBERT J. JONKER
United States District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Jeremy Tyler Swink and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.    <u>Plea to an Information.</u>   The defendant agrees to plead guilty to an Information. The Information charges the defendant with operating an unlicensed money transmitting business in violation of Title 18, United States Code, Sections 2 and 1960. The defendant waives his right to indictment by a grand jury.

2.    <u>The Defendant Understands the Crime.</u>   In order for the defendant to be guilty of violating Title 18, United States Code, Sections 2 and 1960, the following must be true:

    a.    First, the defendant knowingly operated, or aided and abetted the operation of, a money transmitting business.

    b.    Second, the business affected interstate commerce.

    c.    Third, the defendant and business failed to comply with the money transmitting business registration requirements of 31 U.S.C. § 5330 or regulations prescribed

under such section, and the defendant knew the business was not registered with the federal government.

The defendant is pleading guilty because the defendant is guilty of the charge described above.

3. <u>The Defendant Understands the Penalties.</u>   The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 2 and 1960 is the following:

    a.     not more than five years in prison;

    b.     not more than three years of supervised release;

    c.     a $250,000 fine; and

    d.     a $100 mandatory special assessment.

The defendant agrees to pay the special assessment at or before the time of sentencing unless the defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4. <u>Supervised Release Defined.</u>   Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements. The defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum stated above.

5. <u>Factual Basis of Guilt.</u>   The defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing, and which does not include all of the facts underlying the defendant's guilt:

      a.      The defendant volunteered at The Geek Group, a/k/a National Science Institute, located in Grand Rapids, Michigan, from approximately 2014 to January 2019. He reported to Christopher Allan Boden, a/k/a "Captain," and Leesa Beth Vogt, a/k/a "Liz Bokt," a/k/a "Moose."

      b.      The defendant's responsibilities at The Geek Group included staffing the front desk, providing technology training to members, and other assorted tasks. Beginning in 2017, and continuing until approximately December 2018, the defendant sold bitcoin when working at the front desk. Boden taught him how to sell bitcoin and instructed him what to charge for transactions. The defendant would call Boden to handle transactions over certain amounts. When he began selling bitcoin at The Geek Group, the defendant would sell up to $10,000 in bitcoin at a time, but later, at Boden's direction purportedly to comply with the law, the defendant would not sell more than $1,000 per transaction. Instead, when a customer sought more than $1,000, Boden would handle the transaction personally. All of the proceeds from the transactions were comingled, irrespective of whether the defendant processed the transaction or he referred the customer to Boden.

      c.      The defendant deposited the proceeds from sales of bitcoin in a Chase bank account with account number ending in 6810. Vogt, and sometimes Boden, would give him cash to deposit. Boden and Vogt told the defendant not to deposit more than approximately $3,500 to $4,500 at a time, because otherwise the banks might freeze the account. The purpose of the Chase account was to easily transfer the funds to Daniel Reynold DeJager, a/k/a "Daniel Reynold," a/k/a "Daniel Miester," a/k/a "Danichi," who would purchase more bitcoin for the group to sell. Boden, Vogt, and DeJager were listed on the Chase account, but not the

defendant, so he could not go into the bank, and he could only use the ATM to make deposits. The defendant deposited more than $100,000 into the Chase account in 2017 and 2018.

   d. The defendant heard Boden talk about mixing and tumbling, which are methods used to make cryptocurrency transactions hard to trace. Boden told the defendant that they did not need any identifying information about any customers to whom they were selling bitcoin. Some customers were regulars, and some of the regulars smelled of marijuana. Boden told the defendant that he suspected those customers were using the money to buy marijuana.

   e. The Geek Group, Boden, Vogt, DeJager, and the defendant were not registered as a money services business with the United States government, specifically, the United States Department of the Treasury Financial Crimes Enforcement Network ("FinCEN").

  6. <u>Cooperation in Criminal Investigations.</u> The defendant agrees to fully cooperate with the Homeland Security Investigations, the Internal Revenue Service, the U.S. Attorney's Office, and any other law enforcement agency in their investigation of the charge contained in the Information as well as the investigation of crimes over which they have actual or apparent jurisdiction. The defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete, and truthful statement concerning the defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in the defendant's possession or under the defendant's control, including, but not limited to, objects, documents, and photographs. The defendant's obligation to cooperate under this paragraph is an affirmative one and includes the

obligation to voluntarily come forward with any and all information which the defendant should reasonably know will assist in the investigation of other criminal activity. The defendant will not commit any criminal offense during the course of his cooperation with the United States. The defendant will submit to polygraph examination(s) upon request. The defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which the defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

7. The United States Attorney's Office Agrees.

a. Acceptance of Responsibility. The U.S. Attorney's Office agrees not to oppose the defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Guidelines. However, the U.S. Attorney's Office reserves the right to object to the defendant's request if it subsequently learns of conduct by the defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the U.S. Attorney's Office will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

b. Section 1B1.8 Protection for Proffered/Cooperative Statements. The U.S. Attorney's Office agrees that information provided by the defendant through the defendant's proffer(s), and any information provided pursuant to the defendant's promise to cooperate as described in this agreement, will not be used by the government to enhance the defendant's sentence, in accordance with Section 1B1.8 of the Guidelines, and according to the terms of the written agreement entered into between the parties immediately prior to the

5

proffer(s). It is expressly understood, however, that such information may be used by the government at sentencing if the defendant takes a position at sentencing that contradicts information provided by the defendant pursuant to this agreement or any proffer agreement.

   c. <u>Possibility of Sentence Reduction Motions.</u> The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Section 5K1.1 of the Guidelines and/or Rule 35(b) of the Federal Rules of Criminal Procedure. The defendant fully understands that such a motion may be made pursuant to law if, and only if, the defendant fully cooperates with the government and materially and substantially assists the government in the investigation or prosecution of others. The determinations of whether the defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, and of which type of motion to file, will be made in the sole discretion of the U.S. Attorney's Office. The defendant fully understands that this paragraph is not a promise by the government to file a motion for departure or to reduce a sentence. Additionally, the defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion. Furthermore, if the Court were to grant the motion, the Court—not the government—would decide how much of a departure or sentence reduction the defendant receives based upon the nature and extent of the defendant's assistance. The defendant acknowledges and agrees that he may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

  8. <u>The Sentencing Guidelines.</u> The defendant understands that, although the Guidelines are not mandatory, the Court must consult the Guidelines and take them into account

6

when sentencing the defendant. The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The defendant understands that the defendant and the defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guidelines range and the sentence to be imposed. The defendant further understands that the Court shall make the final determination of the Guidelines range that applies in this case, and may impose a sentence within, above, or below the Guidelines range, subject to the statutory maximum penalties described elsewhere in this agreement. The defendant further understands that disagreement with the Guidelines range or sentence shall not constitute a basis for withdrawal of the plea.

9.   <u>There is No Agreement About the Final Sentencing Guidelines Range.</u>   The defendant and the U.S. Attorney's Office have no agreement as to the applicable Guidelines factors or the appropriate Guidelines range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments, and departures.

10.   <u>Waiver of Constitutional Rights.</u>   By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the defendant would have had the following rights:

    a.   The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

      b.      The right to be presumed innocent and to have the burden of proof placed on the government to prove the defendant guilty beyond a reasonable doubt.

      c.      The right to confront and cross-examine witnesses against the defendant.

      d.      The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

      e.      The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

      f.      By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment, or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

11.    <u>Waiver of Other Rights.</u>

      a.      <u>Appeal and Collateral Attack.</u>

            i.      <u>Waiver.</u>  In exchange for the promises made by the government in entering this plea agreement, the defendant waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

           ii.      <u>Exceptions.</u>  The defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

        A. the defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

        B. the defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

        C. the district court incorrectly determined the Guidelines range, if the defendant objected at sentencing on that basis;

        D. the defendant's sentence is above the Guidelines range as determined by the court at sentencing and is unreasonable;

        E. the guilty plea was involuntary or unknowing; or

        F. an attorney who represented the defendant during the course of this criminal case provided ineffective assistance of counsel.

    iii. If the defendant appeals or seeks collateral relief, the defendant may not present any issue in the proceeding other than those described in this subparagraph.

  b. <u>FOIA Requests.</u> The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

12. <u>The Court is Not a Party to this Agreement.</u> The defendant understands that the Court is not a party to this agreement and is under no obligation to accept any

recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The defendant understands that no one—not the prosecutor, the defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the defendant will receive, except that it will be within the statutory maximum.

13. **This Agreement is Limited to the Parties.** This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement applies only to crimes committed by the defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

14. **Consequences of Breach.** If the defendant breaches any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The defendant further agrees to waive and forever give up his right to raise any claim

that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

15. **This is the Complete Agreement.**  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings, or conditions be entered into unless in a writing signed by all parties or on the record in open court.

ANDREW BYERLY BIRGE
United States Attorney

2/24/21
Date

JUSTIN M. PRESANT
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

01-06-2021
Date

JEREMY TYLER SWINK
Defendant

I am Jeremy Tyler Swink's attorney.  I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

1/8/2021
Date

HELEN C. NIEUWENHUIS
Attorney for Defendant

11