```
                  IN THE UNITED STATES DISTRICT COURT

                 FOR THE WESTERN DISTRICT OF MICHIGAN

                           SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                   No.  1:21cr43

 vs.

JEREMY TYLER SWINK,

        Defendant.


Before:

                   THE HONORABLE ROBERT J. JONKER,
                         U.S. District Judge
                        Grand Rapids, Michigan
                        Wednesday, July 7, 2021
                         Sentencing Proceedings

APPEARANCES:

             MR. ANDREW BIRGE, U.S. ATTORNEY
             By:  MR. JUSTIN MATTHEW PRESANT
             330 Ionia Avenue, NW
             P.O. Box 208
             Grand Rapids, MI 49501-0208
             (616) 808-2184

                     On behalf of the Plaintiff;

             FEDERAL PUBLIC DEFENDERS
             By:  MS. HELEN C. NIEUWENHUIS
             50 Louis Street NW, Suite 300
             Grand Rapids, Mi 49503-2633
             (616) 742-7420

                     On behalf of the Defendant.

             Also Present:  Amber Gonzalez, Probation Agent.

REPORTED BY:  MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR
```

```
1        07/07/2021

2        (Proceedings, 3:00 p.m.)

3        THE CLERK:  United States District Court for the

4   Western District of Michigan is now in session, the Honorable

5   Robert J. Jonker, chief judge, presiding.

6        THE COURT:  We are here on the case of the United

7   States against Jeremy Swink, 1:21cr43, at the time set for

8   sentencing, and let's start with appearances, please.

9        MR. PRESENT:  Good afternoon, Your Honor.  Justin

10  Presant with the United States.

11       THE COURT:  All right.

12       MS. NIEUWENHUIS:  And Helen Nieuwenhuis on behalf of

13  Mr. Swink, Your Honor, and he is here and present today.

14       THE COURT:  All right.  Very good.  Let me summarize

15  what I've received to make sure the parties have -- whether I

16  have gotten everything the parties intended me to have.  Of

17  course I have the presentence report from our probation

18  officer.  I have the government motion for departure, and I

19  have a Defense sentencing memo and brief in support of its

20  motion for downward variance.  There is also a letter of

21  support for Mr. Swink sent in by the Defense.  I think that's

22  all I have.  Anything else I should have from the government?

23       MR. PRESENT:  No, Your Honor.

24       THE COURT:  Defense?

25       MS. NIEUWENHUIS:  No, Your Honor.
```

         THE COURT: Okay. Thank you. I do have this coming before me as part of a plea agreement. It was a plea to an information, so there is nothing to dismiss or otherwise that necessarily requires the Court's imprimatur, but to the extent any approval is needed I should let the parties know that I have reviewed that agreement and I think it's consistent with the purposes of sentencing and the other requirements of 6B1.2 of the guidelines so I am approving and accepting the plea agreement.

         It did call for just that conviction by guilty plea to the single count of the information, and from a guideline point of view my understanding is the parties agree that the base would be VI. That there be a 14-point enhancement based on the total deposits whether they were related directly to what Mr. Swink did or to somebody else in the group. Two points added because of knowledge of at least some of the proceeds being tied to illegal activity. All that adds up to 22. I do think that acceptance of responsibility is appropriate and I am granting my two points and the government is moving for the third?

         MR. PRESENT: Yes, Your Honor. The government so moves.

         THE COURT: Okay. I'll grant that, and that would take us to a level of offense 19. Criminal history is category I, and the guideline range on the chart before any other

|     |                                                                      |
| --- | -------------------------------------------------------------------- |
| 1   | considerations would be 30 to 37 months.  Does the government        |
| 2   | have any guideline objections?                                       |
| 3   | MR. PRESENT:  No, Your Honor.                                        |
| 4   | THE COURT:  Defense?                                                 |
| 5   | MS. NIEUWENHUIS:  We do not, Your Honor.                             |
| 6   | THE COURT:  Okay.  Let me start with you, then,                      |
| 7   | Ms. Nieuwenhuis, to talk about the other sentencing issues.  I       |
| 8   | know, of course, the government has its departure motion.  I'm       |
| 9   | sure Mr. Presant will address that, but you can address it as        |
| 10  | well if you want to as well as anything the Defense believes I       |
| 11  | should be thinking about.                                            |
| 12  | MS. NIEUWENHUIS:  Okay.  Your Honor, we are asking the               |
| 13  | Court to consider following the recommendation from the U.S.         |
| 14  | Probation Officer, Ms. Gonzalez.  I think that would be a fair       |
| 15  | and good resolution on this case.                                    |
| 16  | Mr. Swink is 29 years old, and as the Court pointed                  |
| 17  | out, he has been cooperative with the government, and I will         |
| 18  | certainly let Mr. Presant address that.                              |
| 19  | I would like to point out that for a good part of the                |
| 20  | time in this case Mr. Swink actually was a volunteer, and I am       |
| 21  | asking the Court to take that somewhat into consideration when       |
| 22  | fashioning a sentence.  He has absolutely no prior record            |
| 23  | either as a juvenile or as an adult.  He lives in Shelby, North      |
| 24  | Carolina.  We are asking the Court to consider the letter that       |
| 25  | we did file on his behalf.  He is currently employed.  And I am      |

asking the Court to take all of those things into consideration in fashioning his sentence, Your Honor.

THE COURT: Okay. Thank you.

MS. NIEUWENHUIS: You are welcome.

THE COURT: Mr. Swink, I want you to know that you have the option of speaking. No obligation, but certainly an option, and if there is something you'd like me to think about to hear from you directly, I'd invite you to take the opportunity now. You can either sit there and use that microphone, come to the podium if you want, or if you prefer just rest on what your lawyer said we'll leave it at that, but this would be the time if you want to speak.

THE DEFENDANT: Sir, I would be fine staying silent.

THE COURT: All right. Very good. Then we will go to the government. Mr. Presant?

MR. PRESENT: Thank you, Your Honor.

I don't have much to add to my written motion, but just by way of summary, the government is moving for four levels under 5K1.1. That was the committee's judgment based on the cooperation that Mr. Swink furnished. He proffered. It was a truthful proffer in the government's view. He answered all of our questions and then did the same before the grand jury. And so our office's view is that four levels are appropriate.

Unless the Court has any questions, that's all I have

by way of allocution.

THE COURT: No. I'm fine.

MR. PRESENT: Thank you, Your Honor.

THE COURT: Thank you.

All right. Well, we have from a starting point the guideline 30 to 37 months based on the calculations in the presentence report, and then the considerations of departure and variance, and ultimately, of course, the Court has the obligation to fashion and impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing, and in this case I think a combination of departure and variance is appropriate to bring me down to a non-custodial, and in particular I intend to do the sentence that the probation officer has recommended here, which is two years of probation, no custody, and I want to explain my thinking on that since it does amount to a significant combination of variance and departure.

The government's motion for 5K and a four-level departure based on it is, of course, the starting point, and that is a significant reduction all by itself but I think well deserved in this case based on not just what Mr. Presant has summarized here but what we saw in the written materials and what we can tell from the presentence report and the officer's own report of that.

I also think there is additional reason for variance

here. In fact, I suppose you could even consider it potential guideline changes, but I am thinking of it in terms of variance, one of which is role, and I think that's what Ms. Nieuwenhuis is thinking about in part when she talks about the role that Mr. Swink originally played at least for the first couple years, maybe all the way to 2017, as largely an unpaid intern volunteer and certainly not as somebody who got directly involved, as I understand it from the presentence report, in making cash deposits before 2017.

So that's at least two to three years, and I think that shows up in a couple ways. One, if the total amount of the deposits that were made in this fashion as described in the presentence report are somewhere in the neighborhood of 700 or 750,000, the amounts that Mr. Swink was personally responsible for were quite a bit less. And I can understand for relevant conduct purposes why the parties would treat the total amount of money in play, but that has guideline impact, of course, in increasing the base level. And then I think one way to take that into account is with a role adjustment, because I don't think Mr. Swink was by any means the heart, soul or driving force of this operation.

In a related point it seems to me that Mr. Swink's initial engagement at the place was the kind of thing we would normally say is a great thing for a young person to get involved in, namely an internship in an up and coming area that

```
 1   dovetails with the interests and skills of the individual.
 2   It's just a sad tale that this morphed into something that the
 3   founders and operators of what was originally called -- well, I
 4   mean, it eventually was called the Geek Group.  I guess it was
 5   originally called the National Science Institute, but it turned
 6   out to be an operation that had legal problems, and as
 7   Mr. Swink himself pleaded here, amounted to operating an
 8   unlicensed money transmitting business, at least for his
 9   purposes.
10           I think the concerns that the government would
11   rightfully have in any operation like this are demonstrated by
12   the presentence report, the ability basically for people to
13   wash cash currency through bitcoin, particularly the way that
14   the principals of the operation were saying they were able to
15   do with mixing to disguise sources and actual owners.  But all
16   of that it seems to me was something that Mr. Swink was mostly
17   watching and not actively supporting.
18           So I think all things considered the place where
19   Mr. Swink fits from a culpability point of view is much lower
20   than where the guideline range would come out to be here just
21   based on the raw scoring.
22           Finally, pulling apart from this case what from I see
23   in Mr. Swink the absolute lack of any engagement with law
24   enforcement, positive developments in work and attitude that he
25   has displayed over his years, and the character support that
```

1  he's gotten, I think Mr. Swink is a really good risk to make
2  this the one and only time that he's going to have a problem
3  with criminal law enforcement.  So I don't see any need for
4  custody.  I think a probationary sentence accomplishes the
5  purposes of sentencing in this case, and it would include the
6  normal mandatory terms, which are cooperation in the collection
7  of DNA and drug testing, and standard terms that would include
8  Mr. Swink not possessing firearms.  And the only special term I
9  intend for Mr. Swink is a community service requirement that he
10 fulfill over the course of his two years.  100 hours of
11 community service, and I intend to do that in lieu of the fine,
12 because I think it's a more fitting response and one that
13 Mr. Swink is more able to undertake in the case.
14         The probation officer points out that Mr. Swink may
15 well benefit from mental health and should certainly continue
16 his abstention from marijuana and possibly alcohol as well
17 depending on how that interacts with some of his depression,
18 but I don't intend to make conditions of that.  I think from
19 what I can see Mr. Swink is motivated and capable of getting
20 the care he needs on his own for those kinds of things.
21         So the only special condition I intend is that
22 community service, and the fine would be waived then based on
23 inability to pay.  But the special assessment of $100 is
24 something I would intend to impose.
25         So that's the overall intended sentence of the Court

| | |
|---|---|
| 1 | and the reasons for it. I'll start with the government for |
| 2 | legal objections? |
| 3 | MR. PRESENT: No, Your Honor. |
| 4 | THE COURT: And Ms. Nieuwenhuis? |
| 5 | MS. NIEUWENHUIS: No, Your Honor. Thank you. |
| 6 | THE COURT: Okay. Then Mr. Swink, I'm going to go |
| 7 | ahead and impose this as the sentence of the Court, a |
| 8 | non-custodial sentence of probation for two years with the |
| 9 | normal mandatory and standard conditions in effect on that, and |
| 10 | one special condition that you complete 100 hours of community |
| 11 | service within that two years. I am waiving the fine based on |
| 12 | inability to pay, but imposing the $100 special assessment, and |
| 13 | that's the overall sentence of the Court that I am imposing |
| 14 | now. I am going to make it the written judgment of the Court |
| 15 | today, and then you have a 14-day period to appeal. So if |
| 16 | there is anything you want to appeal, you tell Ms. Nieuwenhuis, |
| 17 | I want to appeal, and she'll put the notice on file for you |
| 18 | within that two years. Do you have any questions about that? |
| 19 | THE DEFENDANT: No, sir. |
| 20 | THE COURT: All right. Ms. Nieuwenhuis, anything |
| 21 | else? |
| 22 | MS. NIEUWENHUIS: No, Your Honor. Thank you. |
| 23 | THE COURT: Mr. Presant? |
| 24 | MR. PRESENT: No, thank you, Your Honor. |
| 25 | THE COURT: Okay. My understanding is that the |

probation officer has arranged for you to go over reporting requirements now in the event that I imposed the non-custodial sentence she recommended because we understand you are up here, you know, on a plane. I don't know when you are scheduled to go back, but at least you can take care of whatever the reporting requirements are with Officer Gonzalez before you leave. Okay. Very good. We can be in recess.

        THE CLERK: Court is adjourned.

        (Proceeding concluded, 3:14 p.m.)

REPORTER'S CERTIFICATE

I, Paul G. Brandell, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

/s/ Paul G. Brandell

Paul G. Brandell, CSR-4552, RPR, CRR

U.S. District Court Reporter

399 Federal Building

Grand Rapids, Michigan  49503